IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RESEA PROJECT APS<br><br>Plaintiff,<br><br>v.<br><br>RESTORING INTEGRITY TO THE OCEANS, INC. and<br>KIERAN KELLY<br><br><br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action 5:21-cv-01132-JKP-HJB |

**PLAINTIFF RESEA PROJECT APS'S**
***EMERGENCY* MOTION FOR CIVIL CONTEMPT AND DISCOVERY SANCTIONS**

Consistent with Rule 37 of the Federal Rules of Civil Procedure and the Court's inherent authority, Plaintiff ReSea Project ApS ("ReSea Project") files this *Emergency* Motion for Civil Contempt and Discovery Sanctions, and in support thereof it states as follows:

**I.    PRELIMINARY STATEMENT**

Defendants are flagrantly violating two Court orders. First, immediately after their counsel moved to withdraw, Defendants Restoring Integrity to the Oceans, Inc. ("RIO") and Kieran Kelly resumed their false and malicious social media campaign against ReSea Project, which constitutes a clear and ongoing violation of the Court's order dated February 4, 2022 (ECF 23). Second, Defendants are in violation of the Court's order dated March 30, 2022 (ECF 45) because they have failed to produce electronic documents and associated metadata that are subject to that order—a failure that Defense counsel attributed to their clients' deletion of data. Through their misconduct, Defendants have completely compromised the integrity of the expedited discovery process (and potentially the entire case), forcing ReSea Project to engage in a one-sided discovery exercise in

which Defendants have failed to provide any documents corroborating their false claims against ReSea Project.

## II.     BACKGROUND

**A.     RIO and Kelly launched a false and malicious smear campaign against ReSea Project.**

ReSea Project and RIO are for-profit competitors that offer ocean plastic reclamation services, with both companies having operations in Indonesia. This lawsuit arises from a false and malicious smear campaign launched by RIO and its CEO, Kelly, against ReSea Project. Defendants published numerous falsehoods on social media and elsewhere, alleging that ReSea Project had engaged illegal and fraudulent conduct. For example, Defendants claimed that RIO recovered from a riverbank thousands of illegally dumped bags of reclaimed plastic bearing ReSea Project tags. From there, Defendants alleged that, before dumping those bags, ReSea Project had intentionally added oil and fishing nets to increase the weight of those bags and, in turn, overcharge customers.

None of that was true, and Defendants knew it. Contrary to their claims, RIO purchased those bags from a waste management company called Daur. Daur, in turn, acquired that material from a waste bank in Indonesia where, in accordance with local law and in compliance with its certification from DNV (the well-renowned international certification agency), ReSea Project deposited reclaimed plastic for recycling and other waste treatment. ReSea Project confronted Defendants with the findings from its investigation, which refuted Defendants' allegations. Nonetheless, Defendants' false attacks on ReSea Project continued and, in some respects, worsened, leading to the filing of this lawsuit.

**B.     ReSea Project filed suit and the Court entered an Agreed Order that allowed for expedited discovery and prohibited Defendants from posting on social media about ReSea Project until a final decision on the preliminary injunction.**

ReSea Project asserted claims for, *inter alia*, false advertising under the Lanham Act, defamation, and tortious interference. ReSea Project also sought a preliminary injunction, which was set for hearing on January 28, 2022. *See* ECF 17. At the hearing, with the Court's guidance, the Parties reached agreement on the terms for an agreed order that allowed for expedited discovery and prohibited Defendants from posting on social media or otherwise making other affirmative statements about ReSea Project until the Court reached a decision on ReSea Project's application for a preliminary injunction. The Agreed Order was executed on February 4, 2022 (hereinafter, the "February 4 Order"). *See* ECF 23 at 2 ("The Parties AGREE and the Court ORDERS that, pending a ruling on Plaintiff's request for preliminary injunction, Defendants shall not, directly or indirectly, make any statements to the public or [] any third-party regarding Plaintiff . . . .").

**C.     After producing suspicious documents, Defendants were ordered to produce metadata and Defense counsel was ordered to harvest data from Kelly's e-mail accounts directly.**

ReSea Project's expedited requests for production directed Defendants to produce electronically stored information ("ESI") in a format, including metadata, that leading eDiscovery commentary has described as "the most common way to produce ESI for more than a decade." *See* The Sedona Principles, *Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, 172 (2018). Defendants did not object to ReSea Project's requested production format but, nevertheless, Defendants elected to (i) scrub the ESI of metadata, (ii) reformat electronic documents, (iii) reorganize and combine electronic documents into PDFs, and (iv) apply unexplained redactions—leaving Defendants' productions entirely unreliable. *See* ECF 36 at 4-7. Making matters worse, there were a number of

3

highly suspicious, speciously self-serving documents within Defendants' production that, without metadata, could not be authenticated. *See, e.g.*, ECF 36-3, 36-4.

In addition, it was clear that Defendants' productions were incomplete and that Defendants themselves, without any oversight from their counsel, were picking and choosing which documents got reviewed and produced to ReSea Project, putting Defendants—who had already been caught in numerous falsehoods—in a position to weeding out anything unfavorable. ReSea Project repeatedly urged Defense counsel to interject.[1] *Cf. McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1486 (5th Cir. 1990) ("Counsel have an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests."). But Defense counsel refused, dismissing ReSea Project's concerns as "suspicious conjecture." ECF 42 at ¶ 7.

On March 30, 2022, in response to a motion to compel by ReSea Project, the Court entered an order (hereinafter, the "March 30 Order") requiring Defense counsel to collect certain e-mail accounts, and supplement Defendants' productions with metadata.

> **On or before April 8, 2022**, Defendant Kelly must provide defense counsel with access to [his] email accounts. Defense counsel must then supplement Defendants' responses to Plaintiff's requests for production with relevant metadata **on or before April 15, 2022**. . . . If disagreement remains . . . , [] either party may present the issue to the Court by filing a motion to compel or for protective order **on or before April 22, 2022**. The parties are hereby given notice that, at any hearing on such motion, the Court will consider whether to require the parties or their counsel to pay attorney's fees and other expenses . . . .

---

[1] *See* E-mail from Christopher B. Donovan to Joseph Hoelscher, dated Mar. 3, 2022 10:27AM, attached hereto as **Exhibit A** ("[W]e have serious concerns about the integrity of Defendants' document collection efforts. Some documents suggest that your clients (as opposed to counsel) are culling and determining which documents are produced and which are withheld, which under the circumstances is problematic. [] In addition, some of your productions contained unexplained redactions.").

4

ECF 45 at ¶¶ 1(b), 4.

**D.     Defendants' supplemental production contained obvious discrepancies and was clearly deficient, which—after significant and unexplained delay—Defense counsel attributed to their clients' deletion of data.**

Following the March 30 Order, Defendants made a supplemental production on April 15, 2022.  In the transmittal e-mail, Defense counsel implied that the production was complete.  Mr. Karl, counsel for Defendants, wrote:

> In compliance with the Court's order, I have obtained the contents of Kieran Kelly's OceanIntegrity.com email account. The emails found in my search and review of those contents that are responsive to your requests for production are produced in the below link in .pts format. The passcode to access is [REDACTED]. In my search of the account, I found several emails made after the filing of this lawsuit and/or to RIO's legal counsel. These are privileged and I am withholding them as such. Also included in the below link are the photographs and videos previously produced in their native form. These photos and videos are in a folder marked Confidential--Attorney's Eyes Only.

*See* E-mail from Christopher M. Karl to Christopher B. Donovan, dated Apr. 15, 2022, 9:04PM, attached hereto as **Exhibit B**.

However, a review of Defendants' supplemental production revealed numerous obvious discrepancies. For instance, under the March 30 Order, Defendants were obligated to re-produce materials from their initial production to include metadata. ECF 46 at ¶ 1(b). But numerous documents that were part of Defendants' initial production were missing from their supplemental production, *including the documents that ReSea Project previously identified as suspicious*.  In addition, Defendants' supplemental production included only thirty-one e-mail files in total and, of those files, only *three* were non-duplicative e-mails that were not sent 'to' or 'from' ReSea

Project employees.[2] Moreover, missing from Defendants' production were known e-mail communications that Kelly has had with third parties, including ReSea Project customers. *See, e.g.*, ECF 35-20.

At the outset of a meet-and-confer call on the evening of April 21, 2022, ReSea Project's counsel noted that Defendants were in violation of the March 30 Order. In response, Defense counsel remarked: "How so?"

ReSea Project identified numerous discrepancies and missing documents, adding that there were only a few possible explanations for such deficiencies—namely, that (i) Defense counsel's collection was flawed, (ii) the review was unreliable, (iii) responsive documents were being improperly withheld, or (iv) data had been deleted from Defendants' e-mail accounts. Only then, Defense counsel revealed that Defendants deleted data from their e-mail accounts, including data that was subject to the Court's March 30 Order.

Following that revelation, ReSea Project's counsel asked about Defendants' social media content, which had been the subject of several meet-and-confer calls. Defense counsel revealed that they had not even reviewed Defendants' social media accounts for responsive non-public content, based entirely on their clients' representations that there was none—a representation that was never credible, given that social media has been Defendants' primary tool for attacking ReSea Project. As a result, Defendants' social media accounts have been left susceptible to widespread deletions, just like their e-mail data.

Immediately after these revelations, Defense counsel pivoted, warning that Defendants intended to file their own motion to compel against ReSea Project. ReSea Project's counsel

---

[2] One of those e-mails shows Keith Flitner, a RIO officer, disseminating the false attacks that Defendants made against ReSea Project on LinkedIn to reporters. *See* ECF 47-1. The other two e-mails are simply drafts of communications with ReSea Project. *See* ECF 47-2, 47-3.

responded that Defendants had no good-faith basis for filing one. The next day, ReSea Project filed an emergency motion requesting a status conference with the Court to address Defendants' spoliation of evidence. *See* ECF 47. Hours later, Defendants filed their motion to compel, which—in ReSea Project's view—was a transparent effort by Defendants to distract from their destruction of evidence. *See* ECF 48; *see also* ECF 52.

**E.    The Court ordered Defendants to address spoliation but, instead, Defense counsel moved to withdraw and Defendants moved to indefinitely abate their deadline to address spoliation.**

On April 25, 2022, the Court ordered Defendants to file a response to ReSea Project's spoliation motion by April 29, 2022 (hereinafter, the "April 25 Order"). *See* ECF 49. The day before that deadline, Defense counsel called ReSea Project, indicating that Defendants were not going to file a response and, instead, Defense counsel would be moving to withdraw from their representation of Defendants. Defense counsel asked ReSea Project to consent their withdrawal. ReSea Project responded that, in order to even consider consenting, ReSea Project needs a clear picture of what happened surrounding Defendants' deletion of data. Defendants provided no such information and, on April 29, 2022, Defendants filed a motion to abate their deadline to respond to ReSea Project's spoliation motion, *see* ECF 51, pending the outcome of Defense counsel's motions to withdraw, *see* ECF 50, 53, which now have been set for hearing on May 18, 2022, *see* ECF 54.

**F.    Defendants have ignored requests for non-privileged information about their deletion of data, compounding the prejudice to ReSea Project.**

Depending on the e-mail hosting service RIO used, there may be a period of time in which otherwise "permanently" deleted e-mails can be restored. *See, e.g.*, *Restore a user's permanently deleted email*, GMAIL SUPPORT, ("For up to 30 days after deleting, users can recover their own messages from the Trash . . . . You can't restore: Data that was permanently deleted more than 25

7

days ago.") *available at* https://support.google.com/a/answer/112445?hl=en. That, *inter alia*, is why ReSea Project has repeatedly requested that Defendants provide non-privileged information surrounding the deletion of data from their e-mail accounts, and why ReSea Project requested a status conference on an emergency basis. Defendants have ignored ReSea Project's requests for this information and the resulting delay is potentially compounding the prejudice to ReSea Project by making it more likely that the deleted data can never be restored. *See, e.g.*, E-mail from Christopher B. Donovan to Joseph Hoelscher, dated May 3, 2022, attached hereto as **Exhibit C**.

**G.     In a display of flagrant disregard for the Court's prior orders, Defendants have resumed their malicious smear campaign against ReSea Project.**

On May 5, 2022, in direct violation of the February 4 Order, RIO and Kelly resumed their false and malicious attacks against ReSea Project on May 5, 2022. Kelly posted on his LinkedIn account, attacking ReSea Project for "greenwashing" and tagging DNV (the provider of ReSea Project's third-party certification), VeChain (ReSea Project's blockchain technology provider), and The Hidden Sea (one of ReSea Project's customers) (hereinafter, the "May 5 Kelly LinkedIn Post"). Kelly also tagged the profiles of numerous RIO employees, including Keith Flitner, Dan Jordan, Grainne Dolan, and Rico Jorge Guerrero. That post is shown below:[3]

---

[3] *See* Kieran Kelly LinkedIn Post (last accessed on May 6, 2022), *available at* https://www.linkedin.com/posts/kieran-kelly-5b6774a_httpslnkdindsr5hdcp-greenwashing-is-activity-6927907406421078016-2hrR?utm_source=linkedin_share&utm_medium=member_desktop_web.



Within that post, Kelly embedded a hyperlink to another LinkedIn post from January 21, 2022, which "tags" numerous ReSea Project customers and includes a video showing Kelly falsely accuse ReSea Project of fraud and other impropriety,[4] calling out ReSea Project customers by

---

[4] In that video, Kelly states: "A couple of months back, we called out a company – an environmental company called ReSea. . . . Behind me here is many, many bags belonging to ReSea, bags that they collected, bags that they collected and they put on the blockchain . . . . [T]he auditing

9

name.[5] In a comment to that post, Kelly promoted his competing company, RIO, as a "small environmental company" that is "very passionate about the health of our ocean," adding that ReSea Project's customers "should be ashamed of themselves" for engaging with ReSea Project.[6] That January 21 post was the subject of a supplemental brief that ReSea Project filed in support of its preliminary injunction application; the impact of Defendants' posts is discussed at greater length there. *See* ECF 19.

---

for this entire process was done by a massive third-party auditing company called the DNV. . . . ReSea turned to the business world and companies from all over the world . . . . Those companies bought into the whole spiel coming from the DNV and coming from ReSea regarding how this whole thing was going to go down, but, of course, that didn't happen. . . . Greed came into it and, of course, the plastic wasn't handled correctly. . . . The companies that took part in this that were duped by ReSea, a lot of companies, . . . MessyWeekend, Stoli, Rockay, Eva Solo, Worthmore, FlooringSuperstore.com, Urban Alley Brewery, []Simple Goods, Nordic Oil, Royal Danish Yacht Club, Yellow Lids, Readers [] Copenhagen, Kingfish, just to mention a few. One of the companies I feel sorry for – again, another one of these companies that got duped by – by ReSea and by DNV was the Hidden Sea, a wine company there in Australia. It's a great company and, of course, they bought into this themselves. . . . I guess, you know, it's time for companies to . . . reflect and look carefully at where they're getting their offsets . . . . Again, as you can see behind me, it's a broken problem. One of the biggest problems we saw. . . was the amount of oil that was on the plastics . . . . that they weighed to increase the kilos of the plastic they were actually pulling from the water. . . . One of the other problems that we saw inside the bags again that pushed me [] to push so hard against the likes of ReSea was the amount of netting that they put into the bags, small pieces of netting that were chopped up and put into each bag. . . . To try and paint a picture and say that Indonesian people and Indonesian fishermen are responsible for this is downright disgraceful." *See* ECF 19-2.

[5] *See* Kieran Kelly LinkedIn Post (last accessed on May 6, 2022), available at https://www.linkedin.com/posts/kieran-kelly-5b6774a_packtech-environmental-training-activity-6890164881379749888-8jzS?utm_source=linkedin_share&utm_medium=member_desktop_web.

[6] *See* Kieran Kelly Comment to LinkedIn Post (last accessed on May 6, 2022), available at https://www.linkedin.com/feed/update/urn:li:ugcPost:6890164807778095104?commentUrn=urn%3Ali%3Acomment%3A%28ugcPost%3A6890164807778095104%2C6890180801464561664%29&replyUrn=urn%3Ali%3Acomment%3A%28ugcPost%3A6890164807778095104%2C6890184437775114240%29.

10



Defendants posted similar content to RIO's Facebook page on May 5, 2022 (hereinafter, the "RIO May 5 Facebook Post").[7] In the comment section, Grainne Dolan, RIO's vice president,[8] criticized ReSea Project's DNV-certified traceability system, alluding to RIO's prior false claims. The RIO Facebook account "liked" and responded to Ms. Dolan's comment.

---

[7] RIO Facebook Post (last accessed May 6, 2022), available at https://fb.watch/cR2ATRWDEa/.

[8] Graine Dolan's LinkedIn Profile (last accessed May 6, 2022), available at https://www.linkedin.com/in/grainne-dolan-04986b15b/.



To date, Defendants' false and malicious social media campaign has cost ReSea Project hundreds of thousands dollars. *See, e.g.*, ECF 35 at ¶ 84.

### III.   ARGUMENTS & AUTHORITIES

**A.   Defendants should be held in contempt for flagrantly violating multiple court orders.**

"A court may enforce compliance with any valid order . . . through civil contempt." *SEC v. Faulkner*, No. 3:16-CV-1735-D, 2019 WL 277621, at *2 (N.D. Tex. Jan. 22, 2019). "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *SEC v. Res. Dev. Intern. LLC*, 217 F. App'x 296, 298 (5th Cir. 2007).  Generally, a moving party must establish the adversary's noncompliance by "clear and convincing" evidence. *Whitcraft v. Brown*, 570 F.3d 268, 271 (5th Cir. 2009).

Here, there is no doubt.  Defendants are actively violating two Court orders.

First, in the February 4 Order, the Court ordered that "Defendants shall not, directly or indirectly, make any statements to the public or any third-party regarding Plaintiff" until the Court rules of ReSea Project's application for a preliminary injunction. *See* ECF 23 at 2. Since May 5, 2022, Defendants have indisputably violated the February 4 Order at least *five* times:

(i)   Defendants' publication of the May 5 Kelly LinkedIn Post;

(ii) Defendants' publication of the RIO May 5 Facebook Post;

(iii) Ms. Dolan, RIO's vice president, posting a comment to the RIO May 5 Facebook Post;

(iv) RIO "liking" Ms. Dolan's comment to the RIO May 5 Facebook Post; and

(v) RIO responding to Ms. Dolan's comment to the RIO May 5 Facebook Post.

Second, in the May 30 Order, the Court ordered Defendants to provide certain e-mail accounts to Defense counsel for review by April 8, 2022, who then was obligated to produce responsive materials with metadata by April 15, 2022. *See* ECF 45 at ¶¶ 1(b), 4. Defendants never complied with that order, as materials are indisputably missing from their supplemental production, including materials that were previously produced in an unreliable format, such as the documents located at ECF 36-3, 36-4. Defense counsel has represented that they have not produced those electronic documents with metadata because Defendants deleted that data. Setting spoliation aside for now (which ReSea Project intends to raise in the near future once ReSea Project gets a clearer picture of Defendants' misconduct),[9] Defendants' destruction of evidence is obviously not a valid excuse for failing to obey the Court's order—especially with Defendants simultaneously refusing to provide any details about their deletion of data. *See, e.g.*, *Lear Siegler Services, Inc. v. Ensil Int'l Corp.*, No. SA-05-CA-679-XR, 2011 WL 13174951, at *4 (W.D. Tex. Mar. 15, 2011) ("An alleged contemnor, seeking to establish an impossibility defense, must also establish that in

---

[9] Depending on the severity, extent, and irreversibility of Defendants' discovery misconduct, it is possible that no sanctions will suffice, short of the entry of a default judgment against Defendants coupled with an award of fees and costs. *See, e.g.*, FED. R. CIV. P. 37(b)(2)(A)(vi); *Balancecxi, Inc. v. Int'l Consulting*, No. 1:19-CV-0767-RP, 2020 WL 6886258, at *13 (W.D. Tex. Nov. 24, 2020) (granting default judgment and awarding attorneys' fees to sanction a defendant's intentional destruction of ESI), *report and recommendation adopted sub nom.*, 2021 WL 2194900 (W.D. Tex. Feb. 3, 2021); *accord Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 317 (5th Cir. 2013).

good faith all reasonable efforts have been made to comply. A self-induced inability to comply does not establish a defense to a contempt finding." (internal quotations omitted)).

Because Defendants are flagrantly violating the February 4 Order and the March 30 Order, the Court unquestionably has grounds for holding Defendants in civil contempt.

**B.     A mix of coercive and compensatory sanctions is necessary to compel compliance with the Court's orders and recompense ReSea Project.**

"Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educ. Services, Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005). "Judicial sanctions in civil contempt proceedings, may in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000). Contempt findings and discovery sanctions are rarely disturbed on appeal, as they are reviewed for abuse of discretion. *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 46 (5th Cir. 1992). Similarly, Rule 37 gives a district court wide latitude to sanction a party's failure obey a discovery order. *See* FED. R. CIV. P. 37(b).

The discovery process functions properly only when all parties engage in good faith. Here, throughout the expedited discovery process, Defendants have completely disregarded even their most basic discovery obligations. Indeed, due to Defendants' history of making demonstrably false claims, ReSea Project raised concerns about Defendants' handling of evidence early on.[10] Defense

---

[10] *See, e.g.*, ECF 16 at 18 ("[E]vidence shows that RIO and Kelly have attempted to fabricate evidence of impropriety by ReSea Project by, *inter alia*, purchasing bags of reclaimed plastic from a waste management company and then claiming that ReSea Project illegally dumped those bags into the ocean. . . . What's more, even after the filing of this lawsuit, RIO and Kelly have posted videos on social media showing them cut open and empty the contents from the alleged ReSea Project bags, effectively destroying the evidence they claim shows impropriety by ReSea Project."); Exhibit A ("[W]e have serious concerns about the integrity of Defendants' document collection efforts. Some documents suggest that your clients (as opposed to counsel) are culling

counsel dismissed those concerns and let Defendants themselves determine what documents needed to be reviewed and produced in this case—putting Defendants in a position of improperly withholding unfavorable discovery material and allowing Defense counsel to remain ignorant of it. *See* ECF 42 at ¶ 7 (calling ReSea Project's concerns "suspicious conjecture").

When Defendants were ordered to turnover entire e-mail accounts to their counsel for review and supplementation, Defendants deleted substantial (but ultimately unknown) amounts of relevant data. In fact, given the contents of Defendants' supplemental production, it appears that Defendants' deletions were deliberate and selective, leaving communications that ReSea Project independently possesses and deleting virtually all others (including documents from Defendants' earlier productions that ReSea Project identified as being suspect). Making matters worse, Defendants never alerted the Court that they had deleted data and, therefore, were in violation of the March 30 order. Instead, Defense counsel waited until April 21, 2022 to notify ReSea Project about the deletions and, even then, Defense counsel only did so when pressed about why documents were obviously missing.

Defense counsel has since moved to withdraw, noting that their clients have essentially cutoff contact. *See* ECF 50, ECF 53 at ¶ 6 (noting that Kelly told counsel to "stop performing work," adding that counsel "has been removed from WhatsApp chats and other channels for communications"). Now, following Defense counsel's motions to withdraw, RIO and Kelly have, in a blatant violation of the February 4 Order, resumed their false and malicious social media campaign—a campaign that has cost ReSea Project hundreds of thousands of dollars already. *See* ECF 35 at ¶ 84.

---

and determining which documents are produced and which are withheld, which under the circumstances is problematic.").

15

These are truly extraordinary circumstances that require a swift and substantial response. ReSea Project, therefore, respectfully requests that the Court issue coercive and compensatory sanctions against Defendants as follows:

- A coercive, non-punitive fine of $1,500.00 per Defendant, per day for every day that each social media post, comment, or other public statement violating the February 4 Order remains on the internet;

- A coercive, non-punitive fine of $1,500.00 per Defendant, per day (i) for every day that Defendants remain in violation of the Court's March 30 Order, or (ii) until Defendants file with the Court a sworn statement providing a full and complete disclosure of the circumstances surrounding the deletion of data that now prevents them from complying with the March 30 Order—including but not limited to a disclosure of who was involved in the deletion of the data, how the data was deleted, when the data was deleted, and what measures have been taken, if any, to recover that data; and

- An award of the attorneys' fees and costs that ReSea Project has incurred from February 4, 2022, the beginning of the expedited discovery period, through the resolution of this motion.

ReSea Project submits that the coercive fines described above are appropriately tailored to compel compliance with the Court's orders by Defendants, and that they are necessary to preserve the integrity of the legal process. ReSea Project also submits that the award of fees and costs outlined above, to be calculated at a later date, is appropriate and necessary because, due to Defendants' bad faith and pervasive misconduct, Defendants have completely compromised the expedited discovery process while forcing ReSea Project to engage in a costly one-sided discovery exercise in which Defendants have produced no documents supporting the allegations giving rise to this case.

## IV. CONCLUSION & REQUEST FOR RELIEF

For the reasons set forth above, ReSea Project respectfully requests that the Court GRANT this Motion, hold Defendants in civil contempt, and enter sanctions against Defendants as follows:

- A coercive, non-punitive fine of $1,500.00 per Defendant, per day for every day that each social media post, comment, or other public statement violating the February 4 Order remains on the internet;

- A coercive, non-punitive fine of $1,500.00 per Defendant, per day (i) for every day that Defendants remain in violation of the Court's March 30 Order, or (ii) until Defendants file with the Court a sworn statement providing a full and complete disclosure of the circumstances surrounding the deletion of data that is subject to the Court's March 30 Order—including but not limited to a disclosure of who was involved in the deletion of the data, how the data was deleted, when the data was deleted, and what measures have been taken, if any, to recover that data;

- An award of the attorneys' fees and costs that ReSea Project has incurred from February 4, 2022, the beginning of the expedited discovery period, through the resolution of this motion.

Dated: May 6, 2022                                           Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Marc D. Katz*
Marc D. Katz
Texas Bar No. 00791002
marc.katz@us.dlapiper.com
1900 N. Pearl St. Suite 2200
Dallas, Texas 75201
T: 214.743.4500
F: 214.743.4545

Allissa A.R. Pollard
Texas Bar No. 24065915
allissa.pollard@us.dlapiper.com
1000 Louisiana Street, Suite 2800
Houston, TX  77002
T: 713.425.8445
F: 713.425.8401

Christopher B. Donovan, *pro hac vice*
Texas Bar No. 24097614
christopher.b.donovan@us.dlapiper.com
1000 Louisiana Street, Suite 2800
Houston, TX 77002
T:  713.425.8449
F:  713.300.6040

*Counsel for Plaintiff ReSea Project ApS*

## CERTIFICATE OF CONFERENCE

I hereby certify that, on May 6, 2022, I conferred with counsel for Defendants by phone about the matters raised herein.

                                                */s/ Christopher B. Donovan*
                                                Christopher B. Donovan

## CERTIFICATE OF SERVICE

I hereby certify that, on May 6, 2022, a true and correct copy of the foregoing document has been served upon all counsel of record.

                                                */s/ Christopher B. Donovan*
                                                Christopher B. Donovan